

## HELEN F. DALTON & ASSOCIATES, P.C.
ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

September 5, 2024

**Via ECF**
The Honorable Judge Brian M. Cogan, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Izaguirre et al v. Crosscity Inspection Services, Inc. et al.**
**EDNY Civil Case No.: 1:23-cv-08646-BMC**

Dear Judge Cogan:

Our office represents Jefry Ariel Izaguirre ("Izaguirre"), Ever Geovanny Gonzalez Ceveda ("Ceveda"), Edan Cevedacaceres ("Cevedacaceres"), and Edan Calderon Garcia ("Garcia"), individually and on behalf of all others similarly situated ("Plaintiffs") and we submit this motion jointly with counsel for Crosscity Inspection Services, Inc. ("Crosscity"), Huge Construction LLC ("Huge Construction"), and Meiqiao LLC ("Meiqiao") and Weihong Hu ("Hu"), as an individual (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached a Court-annexed mediation with all parties present on July 26, 2024.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

### I.   The Monetary Terms of the Settlement Agreement are Fair and Reasonable

#### a.   The Settlement Amount

The parties agreed to resolve all claims asserted in this action, including Plaintiffs' counsel's attorneys' fees, which are addressed below, for the global amount of $137,500.00.

### b. Plaintiffs' Position

Plaintiffs commenced this lawsuit alleging, *inter alia*, that they were not paid proper overtime rates of pay and was paid on a bi-weekly basis, in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL).

### a. <u>Plaintiff Jefry Ariel Izaguirre</u>

Plaintiff JEFRY ARIEL IZAGUIRRE was employed by Defendants from in or around June 2021 until in or around March 2022 as a mason and carpenter. Plaintiff worked about five (5) days per week on average. Plaintiff worked about seventy-two-and-a-half (72.5) hours per week from in or around June 2021 to in or around March 2022. Defendants paid Plaintiff a flat rate of approximately thirty dollars ($30.00) per hour for all hours worked from in or around June 2021 to in or around March 2022. Plaintiff alleges that he is owed about thirty-two-and-a-half (32.5) hours of unpaid overtime per week from in or around June 2021 to in or around March 2022.

### b. <u>Plaintiff Ever Geovanny Gonzalez Ceveda</u>

Plaintiff EVER GEOVANNY GONZALEZ CEVEDA was employed by Defendants from in or around February 2021 until in or around February 2022 as a mason and carpenter. Plaintiff worked about five (5) to six (6) days per week on average. Plaintiff worked about seventy-seven-and-a-half (77.5) hours per week from in or around February 2021 to in or around February 2022. Defendants paid Plaintiff a flat rate of approximately twenty-five dollars ($25.00) per hour for all hours worked from in or around February 2021 to in or around February 2022. Plaintiff alleges that he is owed about thirty-seven-and-a-half (37.5) hours of unpaid overtime per week from in or around February 2021 to in or around February 2022.

### c. <u>Plaintiff Edan Cevedacaceres</u>

Plaintiff EDAN CEVEDACACERES was employed by Defendants from in or around June 2020 until in or around December 2022 as a carpenter. Plaintiff worked about five (5) to six (6) days per week on average. Plaintiff worked about eighty-two and a half (82.5) to ninety-nine (99) hours per week from in or around June 2020 to in or around December 2021. Defendants paid Plaintiff a flat rate of approximately twenty-eight dollars ($28.00) per hour for all hours worked from in or around June 2020 to in or around December 2021. Plaintiff alleges that he is owed about fifty-and-three-quarters (50.75) hours of unpaid overtime per week from in or around June 2020 to in or around December 2021.

### d. <u>Plaintiff Edan Calderon Garcia</u>

Plaintiff EDAN CALDERON GARCIA was employed by Defendants from in or around March 2019 until in or around January 2022 as a carpenter. Plaintiff worked about five (5) to six (6) days per week on average. Plaintiff worked about fifty-nine (59) to sixty-seven (67) hours per week from in or around March 2019 to in or around August 2020. Defendants paid Plaintiff a flat rate of approximately twenty-five dollars ($25.00) per hour for all hours worked from in or around March 2019 to in or around August 2019 and approximately thirty dollars ($30.00) per hour for all hours worked from in or around September 2019 until in or around August 2020.

As alleged above, Plaintiffs were owed unpaid overtime per week during their employment. Moreover, Plaintiff Garcia alleged that he was paid on a bi-weekly basis, failing to

timely pay Plaintiff his first week of wages. Based on the above, Plaintiffs alleged they were owed approximately $194,101.64 in unpaid overtime wages, approximately $100,643.57 in liquidated damages for late payments as to Plaintiff Garcia, not including any other monetary relief that Plaintiffs may have been entitled to under the FLSA or NYLL.

During the course of discovery mediation process, the parties exchanged relevant information and documentation regarding Plaintiff's allegations. Defendants provided information and voluminous documentation pertaining to the dates of Plaintiffs' employment, the number of hours worked by Plaintiffs and whether Plaintiffs received any additional compensation for any work performed above 40 hours per week.

Although Plaintiffs maintained that their alleged dates of employment, alleged hours worked per week and alleged rates of pay were correct, Plaintiffs acknowledged the sharp factual disputes that existed between the parties on these issues. Based on the information and documentation exchanged and confidential discussions held with the Court-annexed mediator, Plaintiffs believed that a reasonable range of recovery for their alleged overtime claim was around $140,000.00, notwithstanding the disputes created by Defendants' records.

Although Plaintiffs were confident that they could prevail on all of their claims should this matter have proceeded to trial, Plaintiffs' preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture early in the litigation process avoids the inherent risks and costs of litigation and allows Plaintiffs to recover a sum certain in the near future as opposed to the uncertainty of a trial at a much later date in time.

As such, based on the factual disputes as to the hours worked by Plaintiffs and the rates of pay received by Plaintiffs as well as Defendants' record production, Plaintiffs agreed to the settlement of $137,500.00. Settlement at this juncture avoids the inherent risks and costs of litigation and allows Plaintiffs to recover a substantial amount of their alleged unpaid wages claim – a figure strongly disputed by Defendants – in the near future as opposed to the uncertainty of recovery at a later date in the future.

Based on all of the above, Plaintiffs believe that the settlement is a fair and reasonable resolution as to their wage claims.

### c. Defendants' Position

Defendants' position is that the plaintiffs were independent subcontractors working on their own work schedules. The Plaintiff brought their own tools to the job site. Defendants did not supervise their work and their time to work. Defendants have paid all their time in accordance with the time sheets submitted by the plaintiffs.

In order to avoid paying legal fees, Defendants settled the disputes amicably for a total payment of $137,500 payable in seven (7) installments for each payment of $19,642.86.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $137,500.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a mediation session before a qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiffs' employment, the hours worked by Plaintiffs, the pay received by Plaintiffs, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 7 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing his experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position

is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiffs

The parties agreed to a global settlement of $137,500.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiffs will recover $90,745.00 after the requested attorneys' fees and expenses. Each Plaintiff will receive an amount proportional to their individualized damage calculation, which accounts for: 1) the alleged dates of their employment, 2) the alleged number of hours worked per week, 3) the alleged rates of pay received, and 4) Plaintiffs' counsel's detailed analysis of Defendants' record production.

#### b. Requested Attorneys' Fees and Expenses

Plaintiffs' counsel respectfully requests $1,383.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $681.00
- the costs of mediator's fee: $300.00

Additionally, Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($136,117.00), or $45,372.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $46,755.00.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $137,500.00
**Attorneys' Expenses:** $1,383.00
**Net Settlement Amount:** $136,117.00 ($137,500.00 - $1,383.00)
**Requested Attorneys' Fees:** $45,372.00 ($136,117.00 / 3)
**Total payable to Attorneys:** $46,755.00 ($45,372.00 + $1,389.00)
**Total payable to Plaintiffs:** $90,745.00 ($137,500.00 - $46,755.00)

Plaintiffs' attorneys and their client have a retainer agreement that is reduced to writing and is signed by the clients. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.,* 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

In further support of this fee request, we attach hereto:

- Plaintiffs' counsel's billing records and qualifications (**Ex. 2**)
- Plaintiffs' counsel's invoices and receipts for requested costs (**Ex. 3**)

**IV.     Closing**

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable as the settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court's Mediation Program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

                                                                                    Respectfully submitted,

                                                                                    *James O'Donnell*
                                                                                     James O'Donnell, Esq.